Susan **NEALY**, individually, and as Administratrix of the Estate of Glenn Nealy, deceased, Plaintiff,

v.

U.S. **HEALTHCARE HMO**, U.S. Healthcare Versatile Plus HMO, U.S. Health Insurance Co., Inc., Richard H. Bernstein, M.D. and Ralph Yung, M.D., Defendants.

No. 93 Civ. 1577 (CSH).

United States District Court,
S.D. New York.

March 2, 1994.

style of the child. *Brescia v. Fitts,* 56 N.Y.2d 132, 451 N.Y.S.2d 68, 71, 436 N.E.2d 518, 521 (1982).

Kenneth J. Kelly, Epstein Becker & Green, P.C., New York City, for U.S. Healthcare HMO, U.S. Healthcare Versatile Plus HMO, U.S. Health Insurance Co., Inc. and Richard H. Bernstein, M.D.

Eliot R. Clauss, Peltz, Walker & Dubinsky, New York City, for Ralph Yung, M.D.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Susan Nealy commenced this action in the Supreme Court of the State of New York, County of Bronx, individually and as administratrix of the estate of Glenn Nealy, against Defendants U.S. Healthcare HMO, U.S. Healthcare Versatile Plus HMO, U.S. Health Insurance Co. Inc. (collectively "US Healthcare"), Richard H. Bernstein, M.D. ("Bernstein") and Ralph Yung, M.D. ("Yung"). Defendant US Healthcare is a health maintenance organization in the business of issuing policies of insurance for health care coverage. Defendant Bernstein, at all relevant times, served as Vice President and Director of Defendant US Healthcare. Defendant Yung, at all relevant times, was a primary care practitioner who provided medical care to individuals enrolled in plans provided by Defendant US Healthcare. Defendants US Healthcare and Bernstein contend that neither provided direct medical services. (Defs.' Mem.Supp. Dismiss at 2). Plaintiff does not contest any of these statements.

Plaintiff's complaint alleges breach of contract, misrepresentation, professional misconduct, medical malpractice, wrongful death, loss of services, negligent infliction of emotional distress and breach of fiduciary duty. These causes of action arise out of the death of Plaintiff's decedent husband, Glenn Nealy, while he was enrolled in a health care plan provided by defendant US Healthcare.

Defendants US Healthcare and Bernstein removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a), (b) and (c), on the ground that Plaintiff's claims are based on a federal question under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Those Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. Plaintiff cross-moves to remand the action to state court for want of a federal question. Defendants US Healthcare and Bernstein contend that Plaintiff's state law claims are preempted by ERISA and therefore the complaint fails to state a claim upon which relief can be granted. Defendant Yung did not join in this motion. Plaintiff argues that her claims are not preempted and thus this Court lacks subject matter jurisdiction.

## BACKGROUND

Plaintiff's decedent, Glenn Nealy, was employed by Photocircuits Corp. (Complaint ¶ 14.) During March 1992, Plaintiff's decedent enrolled in the "US HealthCare Versatile Plus" health care plan ("the plan") offered by Defendant US Healthcare to employees of Photocircuits Corp. It is undisputed that under this plan defendant US

Healthcare was to provide Glenn Nealy with insurance coverage for his medical care.

Plaintiff alleges that Defendant US Healthcare represented to Plaintiff's decedent that the plan would enable him to continue treatment of his pre-existing anginal condition. According to the complaint, Defendants' plan and policy provided "expressly and implicitly, that Plaintiff's decedent's special medical needs would be covered, and that Plaintiff's decedent would be entitled to continue, uninterrupted" the medical treatment that had been in progress, including treatment by the doctors Glenn Nealy had been seeing. (Complaint ¶¶ 27–28.) Plaintiff further contends that Glenn Nealy followed all necessary procedures for enrollment and qualification under the plan and attempted to see Defendant Yung, a participating primary care physician. (Complaint ¶ 29.) Plaintiff alleges that as a result of US Healthcare's failure to furnish Glenn Nealy with the proper identification, Yung refused to see him on or about April 2, 1992 and April 3, 1992. Thus, Plaintiff states, Glenn Nealy was unable to obtain the proper "referral" from Yung that defendant US Healthcare told him was necessary to continue treatment by his own doctors. (Complaint ¶¶ 30–35.)

On or about April 9, 1992, Yung agreed to see Glenn Nealy but denied any knowledge as to US Healthcare's alleged procedures regarding the "referral" for follow-up treatment by Glenn Nealy's own physicians. Defendant Yung renewed Glenn Nealy's prescriptions for medication previously prescribed by his physicians, but according to Plaintiff, Glenn Nealy was unable to fill the prescriptions because "representatives of defendant[ ] US Healthcare provided incorrect and invalid information to the pharmaceutical provider." (Complaint ¶ 38.)

Plaintiff's decedent, between April 9 and May 18, 1992, repeatedly tried to obtain the proper authorization from representatives of Defendant US Healthcare to continue treatment by his physicians. (Complaint ¶ 39.) According to Plaintiff, on or about April 29, 1992, Defendants US Healthcare and Bernstein, "in violation of representations previously made to Plaintiff's decedent, ... formally denied, in writing, Plaintiff's decedent's

request for 'follow-up visits' to [his own physicians] for the reason that they had 'a participating provider in the area.'" (Complaint ¶ 40–41.)

On or about May 15, 1992 Defendant Yung provided Plaintiff's decedent with a "referral" that authorized Plaintiff's decedent to visit a "participating" cardiologist on May 19, 1992. (Complaint ¶¶ 42–43.) On May 18, 1992, Glenn Nealy suffered cardiac arrest and died as a result of a massive myocardial infarction. (Complaint ¶ 44.)

Plaintiff contends that Defendants' negligence and wrongful acts caused a delay in her husband's medical treatment which eventually led to his death. Plaintiff pleads the following causes of action:

(1) Against all Defendants: breach of contract and misrepresentation,

(2) Against all Defendants: violation of "standard of professional conduct",

(3) Against Defendants Bernstein and Yung: medical malpractice,

(4) Against all Defendants: wrongful death pursuant to New York State Estate, Powers and Trusts Law § 5–4.1,

(5) Against all Defendants: negligence,

(6) On behalf of Plaintiff Susan Nealy, individually, against all Defendants: loss of services,

(7) Against all Defendants: breach of fiduciary duty.

█ In evaluating a defendant's motion to dismiss, the court must construe all facts in the light most favorable to the Plaintiff, and accept as true all Plaintiff's well-pleaded factual allegations. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### I. Propriety of Removal

In Plaintiff's motion to remand, she contends that removal to this Court was improper because her Complaint is framed solely on the basis of state law and makes no reference to ERISA. The sole case on which Plaintiff relies, *Davis v. American Gen. Group Ins. Co.,* 732 F.Supp. 1132 (N.D.Ala.1990), stands for the proposition that a defendant's motion

to dismiss following removal from state court, on the grounds that the complaint fails to state a claim under ERISA, is a concession of a lack of federal question jurisdiction. Plaintiff's reliance on this case is misplaced. I first note that *Davis* is not binding on this Court, nor is it in accordance with the law of the Second Circuit. But more importantly, the Northern District of Alabama failed to cite or consider *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), in which the Supreme Court dealt directly with this issue.

■■■ Ordinarily, a federal court's determination of its removal jurisdiction is guided by the "well-pleaded complaint" rule. The rule states that a defendant cannot remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2864, 77 L.Ed.2d 420 (1983). A federal defense, such as federal preemption, which does not appear on the face of a well-pleaded complaint, is insufficient by itself to permit removal. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

However, in *Metropolitan Life,* 481 U.S. at 63–67, 107 S.Ct. at 1546–48, the Supreme Court noted that a corollary to the well-pleaded complaint rule has developed where Congress "may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546–47. The plaintiff in *Metropolitan Life* filed a number of state law claims against his insurance company and his employer. *Id.* at 61, 107 S.Ct. at 1545. The defendants removed the suit to federal court alleging federal question jurisdiction over the disability benefits claim by virtue of ERISA. *Id.* Relying on Congress' intent to have causes of action fall within the civil enforcement provision of ERISA and the preemptive force of ERISA, the Court concluded that a defense of ERISA preemption constitutes an exception to the well-pleaded complaint rule. *See id.* at 65–66, 107 S.Ct. at 1547–48. This holding has been followed by the Second

Circuit in *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 11 (2d Cir.1992), as well as a number of other circuits. *See McCoy v. Massachusetts Inst. of Technology,* 950 F.2d 13 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992); *Bartholet v. Reishauer,* 953 F.2d 1073 (7th Cir.1992); *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124 (9th Cir.1992).

■■■ In the case now before this Court, Plaintiff asserts a number of state law claims to which the Defendants respond with a defense of ERISA preemption. Following the mandate of the Supreme Court and the Second Circuit, removal of this case from state to federal court was properly granted. Accordingly, the Plaintiff's motion to remand must be denied as to the claims that are preempted by ERISA.

## II. Preemption of State Law Claims

ERISA is a comprehensive statute designed by Congress to regulate employee welfare benefit programs. To fall within the scope of ERISA, a plan, fund or program must be

> "established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. § 1002(1) (1988)

It is uncontested that the plan provided by Defendant US Healthcare to Glenn Nealy, as an employee of Photocircuits Corp., is controlled by ERISA.

In enacting ERISA, it was Congress' intent that a body of federal substantive law would govern issues involving rights and obligations under private welfare and pension plans. More specifically, Congress wanted to "ensure that plans and plan sponsors would be subject to a uniform body of law" and thus minimize "the burdens of complying with conflicting directives among States or between States and the Federal Government."

*Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990); *see also FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 10–11, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987). Thus, as part of ERISA's enforcement scheme, most state laws relating to employee benefit plans are preempted. *See* 29 U.S.C. § 1144 (1988). The preemption provision, § 514(a) of ERISA, provides "this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1988). Determining which state law claims will survive ERISA preemption has been the subject of much litigation in the federal as well as the state courts.

The Supreme Court has examined the ERISA preemption clause on a number of occasions. Recently, in *Ingersoll–Rand Co. v. McClendon,* supra, the Court reiterated its position that the preemption provision of ERISA is to be given the broadest interpretation. "Its 'deliberately expansive' language was 'designed to establish pension plan regulation as exclusively a federal concern.'" *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1981)). The plaintiff in *Ingersoll–Rand* brought a claim of wrongful discharge against his former employer alleging that his discharge was based on his employer's desire to avoid making contributions to his pension fund. *Id.,* 498 U.S. at 135–36, 111 S.Ct. at 481. The Supreme Court held that the cause of action that the Texas Supreme Court recognized "related to" the Plaintiff's ERISA covered pension plan and was therefore preempted. *Id.* at 140, 111 S.Ct. at 483.

In deciding if a state law is preempted, courts are guided by the "relate to" language of the provision. Thus, § 1144(a) allows ERISA to preempt claims based on state laws which, when applied to certain fact patterns, have a connection with or an impact on an ERISA plan. As the Supreme Court has repeatedly stated, "[t]he phrase 'relate to' was given its broadest common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co.,* 481 U.S. at 47, 107 S.Ct. at 1552 (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (in turn quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983))). Even if a state law claim "is not specifically designed to affect such plans, or the effect is only indirect," under this "broad common sense meaning" it may be preempted. *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483.

The Supreme Court has on occasion recognized limitations on the breadth of ERISA preemption. *See, e.g., Mackey v. Lanier Collection Agency and Servs., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (ERISA did not preempt a State's general garnishment statute, even though it was utilized to collect judgments against plan participants). Plaintiff relies heavily on the statement by the *Mackey* Court that "lawsuits against ERISA plans for run-of-the-mill state-law claims ... or even torts committed by an ERISA plan" are not contemplated by Congress as subject to preemption. *Id.* at 833, 108 S.Ct. at 2187. But that comment was made in reference to types of lawsuits where the plaintiff was a third party suing an ERISA plan, not a *plan* participant suing his or her plan provider. The Supreme Court cited as examples of non-preemption: *Morris v. Local 804, Delivery & Warehouse Employees Health & Welfare Fund,* 116 Misc.2d 234, 455 N.Y.S.2d 517 (1982) (landlord suing ERISA plan for unpaid rent); *Luxemburg v. Hotel & Restaurant Employees & Bartenders Int'l Union Pension Fund,* 91 Misc.2d 930, 398 N.Y.S.2d 589 (1977) (attorney suing former client, ERISA plan, to enforce a retainer agreement); and *Abofreka v. Alston Tobacco Co.,* 288 S.C. 122, 341 S.E.2d 622 (1986) (physician suing ERISA plan for libel and slander). *Id.* 486 U.S. at 833 n. 8, 108 S.Ct. at 2187 n. 8. But, as stated above, ERISA preemption applies to claims filed by plan participants against an ERISA plan. I reject Plaintiff's contention that the language in *Mackey* and the cases cited by the *Mackey* Court support Plaintiff's claim.

Prior to *Mackey*, the Court recognized that there are some state laws that Congress did not mean for ERISA to preempt. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. The Second Circuit has adopted this limitation and refused to interpret ERISA as preempting state statutes that "as a matter of common sense" only tangentially or remotely effect ERISA plans. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 145 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

By comparing the type of state laws that have survived ERISA preemption with those that have been found preempted, the Second Circuit set forth in *Aetna* a method for determining whether a state law "relates to" an employee benefit plan or has only a "tenuous, remote or peripheral" impact. *See id.* at 145–48. The court found that three types of laws were generally found preempted: (1) those that "provide an alternative cause of action to employees to collect benefits protected by ERISA;" (2) those that refer specifically to ERISA plans and apply solely to them; and (3) those that "interfere with the calculation of benefits owed to an employee." *Id.* at 146. Citing the Supreme Court's decision in *Pilot Life*, the court included in this category common law tort and contract actions "asserting improper processing of a claim for benefits under an ERISA covered benefit program." *Id.*

The laws that the Second Circuit found were not preempted were "laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental." *Id.* The court went on to explain that ERISA preemption is triggered when a law has an effect on the administration of the plan, "such as determining an employee's eligibility for a benefit and the amount of that benefit." *Id.* at 146–47.

Using the Second Circuit's guidance in determining whether Plaintiff's state law claims are preempted, I conclude that Plaintiff's claims against Defendants US Healthcare and Bernstein fall within the category of claims preempted by ERISA. In ruling on Plaintiff's claims it will be necessary to determine the benefits that the ERISA plan was to provide to Glenn Nealy. Thus the very existence and core of the plan would have to be scrutinized. In effect, it will require the trier of fact not only to determine the specific benefits, but how these benefits were administered by US Healthcare. This is exactly the situation that Congress wanted to avoid by enacting ERISA and providing for broad preemption. US Healthcare and Bernstein, as the plan providers, are controlled by ERISA and any remedy that Plaintiff is entitled to must derive from the Act itself.

In *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61 (D.Conn.1990), the court was faced with facts very similar to the ones before this Court. The Plaintiff in *Altieri* claimed negligence, misrepresentation and breach of contract against his dental health care plan provider for failure to investigate the competence of a participating dentist. *Id.* at 62. The court found that the Plaintiff's claims were preempted because "they all 'had one central feature: the circumstances of [the Plaintiff's] medical treatment under his employer's [dental] services plan for employees.'" *Id.* at 64 (quoting *Rollo v. Maxicare of La., Inc.*, 695 F.Supp. 245, 248 (E.D.La.1988)).

A number of other courts have also found that ERISA preempts claims of breach of contract and misrepresentation filed by plan participants against plan providers. *See, e.g., Smith v. Dunham–Bush, Inc.* 959 F.2d 6, 10 (2d Cir.1992) (employee's common law claims of breach of oral promise and negligent misrepresentation were preempted by ERISA); *Sandler v. N.Y. News, Inc.*, 721 F.Supp. 506, 512 (S.D.N.Y.1989) (breach of contract claim preempted by ERISA; negligent misrepresentation not preempted by ERISA because plaintiff was an employee suing his employer and resolution of the claim would have had no direct affect on administration of benefits under the plan); *Fortune v. Medical Ass'n of Woodhull, P.C.*, 803 F.Supp. 636, 640 (E.D.N.Y.1992) (ERISA preempted claim of breach of contract by estate of deceased employee); *Stone and Stone v. Blue Cross and Blue Shield of Conn.*, No. Civ. N–88–147

1988 WL 146645 (D.Conn. Jan. 6, 1989) (breach of contract, negligent or reckless disregard of defendant's obligations to plaintiff and intentional misrepresentation preempted by ERISA).[1]

■ Examining Plaintiff's claims against Defendants US Healthcare and Bernstein, each "relates to" the ERISA plan and must fall to ERISA preemption. Count one, alleging breach of contract and misrepresentation, makes explicit reference to the plan: "[d]efendants have breached the terms and conditions of the ... agreement [of health care coverage]." (Complaint ¶ 47–48.) The misrepresentations that Plaintiff alleges deal expressly and exclusively with Plaintiff's decedent's benefits under the plan: "Defendants have made material representations ... regarding the coverage to be afforded under the aforementioned health care plan and policy of insurance." (Complaint ¶ 49.)

■ Plaintiff's second and fifth causes of action (violation of professional misconduct and negligent infliction of personal injuries) are artfully pleaded causes of action for medical malpractice, which Plaintiff already alleges as her third cause of action. Because all three of these claims constitute a single claim of medical malpractice, I will treat them as a single cause of action. However, no matter how the claim is pleaded, state law claims of medical malpractice are preempted by ERISA as well. *See e.g., Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) (ERISA preempted medical malpractice claim and action for wrongful death). The "relate to" test is satisfied because the circumstances surrounding Plaintiff's husband's medical treatment, under the US Healthcare plan, are "part and parcel of her claim." *Ricci v. Gooberman,* 840 F.Supp. 316 (D.N.J.1993) (finding a claim of medical malpractice against an ERISA plan provider preempted by ERISA).

The relationship between Defendants US Healthcare and Bernstein and Plaintiff's decedent was based on the terms of the ERISA plan. The plan directed the decedent to the Defendants for the medical care that he sought and governed the treatment that Defendants were to provide him. Thus, the ERISA plan was the source of this affiliation. Although Plaintiff is not seeking benefits under the healthcare policy, her medical malpractice claim requires a finding that the Defendants wrongfully administered the plan. Plaintiff's allegations in the complaint, that the Defendants were grossly negligent "in failing to take reasonable steps to provide for his timely and adequate care and treatment," support this conclusion. (Complaint ¶ 62.)

The Fifth Circuit's decision in *Corcoran* is instructive in our determination of the medical malpractice issue as well as Plaintiff's wrongful death claim. In *Corcoran,* parents sued their health care provider for negligence, medical malpractice, wrongful death and loss of consortium resulting from the death of their unborn child. 965 F.2d at 1324–25. Plaintiffs alleged that the defendant's failure to provide plaintiff wife with hospitalization while in a category of high risk pregnancy was a denial of proper medical treatment and caused the death of her unborn child. The district court ruled that all plaintiffs' claims "related to" the employee benefit plan and were preempted by ERISA. *Id.* at 1325. In affirming the district court, the Fifth Circuit found that although plaintiffs' claims did not explicitly refer to or were premised on an ERISA plan, the negligence based causes of action had a sufficient effect on the ERISA plan. *Id.* at 1334.

1. It is important to note that the decisions on claims of misrepresentation that arise from the sale of benefit plans reflect a split in the circuits. *See, Dipietro–Kay v. Interactive Benefits Corp.,* 825 F.Supp. 459, 461–62 (D.Conn.1993) (contrasting Seventh, Eleventh and Eighth Circuit holdings that ERISA preempts claims of misrepresentation with Fifth, Sixth and Tenth Circuit decisions reaching opposite conclusions). The *Dipietro–Kay* court found that the misrepresenta-

tion claims "neither interfere with the maintenance of a nationally uniform administrative scheme nor subject [defendant] to conflicting regulation." *Id.* at 462. The court refused to find that the claim was preempted. But it did not refer to *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6 (2d Cir.1992), which specifically dealt with a claim of misrepresentation based on an ERISA plan and held the claim preempted. I reach that conclusion in the case at bar.

Plaintiff's wrongful death cause of action, Count four, is also based on the Defendants' negligence in failing to provide her decedent with proper medical treatment. As discussed above, all claims of negligence against the ERISA plan providers that relate to the ERISA plan must be preempted. This claim is no exception.

In further support of preemption of Plaintiff's wrongful death cause of action is the Tenth Circuit's decision in *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505 (10th Cir.1991). The court of appeals affirmed the district court's finding that a claim for wrongful death was preempted by ERISA. The court reasoned that since (1) the Kansas wrongful death statute limited claims to those that the decedent could have brought had he lived and (2) the claims would have been barred by ERISA if brought by the decedent because of their relation to his plan, the district court was correct in its ruling.

The New York Wrongful Death Statute, N.Y. Est. Powers & Trusts § 5–4.1 (McKinney 1981 & Supp.), states that a "personal representative ... of a decedent ... may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent ... if death had not ensued." Thus, since Glenn Nealy would have been barred from bringing a claim of negligence against US Healthcare and Bernstein, Plaintiff's claim of wrongful death cannot survive ERISA preemption.

As to Plaintiff's claim, individually, for loss of consortium, this too must be dismissed on the grounds of ERISA preemption. The basis for Plaintiff's claim is the negligence of the Defendants in administering her husband's health care plan. Even though Plaintiff herself is not a plan participant, the ERISA plan is directly implicated. Plaintiff could not recover without reference to the plan or the actions taken by the Defendants pursuant to the plan. *See Reilly v. Blue Cross & Blue Shield United of Wi.*, 846 F.2d 416, 418 (7th Cir.) (affirming district court's decision that ERISA preempted claims of loss of consortium and intentional infliction of emotional distress), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117

(1988); *Dearmas v. Av–Med, Inc.*, 814 F.Supp. 1103, 1107 (S.D.Fla.1993) (claims of loss of consortium preempted by ERISA); *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, 763 F.Supp. 1023, 1029 (E.D.Mo.1991) (wife's claim for loss of consortium "related to" an ERISA plan and was thus preempted).

The last theory upon which Plaintiff relies is that Defendants, as plan providers, breached their fiduciary duty. Preemption applies to this particular claim because the civil enforcement provision of ERISA provides a specific remedy for breach of fiduciary duty once it is found that a plan is covered by ERISA. *See*, 29 U.S.C. §§ 1104, 1109, 1132(a)(2) (1988). While Section 409(a) of ERISA, 29 U.S.C. § 1109(a), imposes liability for breach of fiduciary duty, it does not authorize, directly or by implication, a cause of action for extra-contractual damages. The relief authorized by this section is limited to the plan itself. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 139–48, 105 S.Ct. 3085, 3088–93, 87 L.Ed.2d 96 (1985).

Plaintiff contends that if her claims are dismissed she will be left with no adequate remedy. The Second Circuit found this argument unavailing in *Smith v. Dunham–Bush, Inc., supra.* The *Smith* court relied on the goal of ERISA preemption to wholly eliminate state law claims by benefit plan participants and beneficiaries and only allow the causes of action provided in the civil enforcement provisions to stand. That holding controls the case at bar.

Plaintiff's last contention is that Defendants failed to comply with the requirements of removal pursuant to 28 U.S.C. § 1441 and § 1446. First, Plaintiff claims that because Defendant Yung failed to join in the petition for removal or file one on his own behalf the action must be remanded. The petition for removal was filed on March 15, 1993, by Defendants US Healthcare and Bernstein. According to Plaintiff's Memorandum, Defendant Yung was not served with the Summons and Verified Complaint until March 22, 1993. Although the rule in *Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900), states that all defendants must join in the

petition for removal, an exception holds that defendants not yet served, need not join. It would be impossible for a defendant that has not yet been effectively served to join in a petition for removal. *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir.1992). Thus, removal by Defendants US Healthcare and Bernstein on March 15, 1993, before Dr. Yung was served, was proper.[2]

Second, Plaintiff argues that Defendants failed to put up a bond. Plaintiff cites 28 U.S.C. § 1446(d) in support of this contention. However, § 1446(d) as amended makes no mention of a bond requirement. Furthermore, the Commentary following the amendment states that Congress eliminated the removal bond requirement. *See* West Pocket Part (1993) at 5. Plaintiff's reliance on this provision is misplaced.

In summary, the actions of Defendants US Healthcare and Bernstein sufficiently relate to the health care plan and are preempted by ERISA. Although Defendant Bernstein is a licensed physician, Plaintiff has sued him in an administrative capacity, as Vice President and Director of Defendant US Healthcare, and nowhere has she alleged that he provided any medical care or treatment to the decedent. In contrast, the preemption doctrine does not purport to cut off state-law claims for malpractice against Defendant Yung. His actions, as the provider of direct medical care, do not relate to the ERISA plan and thus preemption is not appropriate. Plaintiff's claims against Defendant Yung will be remanded to state court on the ground that there is no basis for federal jurisdiction.

### ORDER

For the foregoing reasons, Plaintiff's cross-motion to remand the entire action to the Supreme Court of the State of New York, Bronx County, is denied.

The motion of Defendants U.S. Healthcare HMO, U.S. Healthcare Versatile Plus HMO, U.S. Health Insurance Co., Inc. and Richard H. Bernstein to dismiss the complaint as to them is granted. The Clerk is directed to

dismiss the complaint as to those Defendants with prejudice but without costs.

The Clerk is directed to remand Plaintiff's Complaint as to Defendant Ralph Yung to the Supreme Court of the State of New York, Bronx County.

It is SO ORDERED.

---

2. Although not filed with this Court, Attorney for Defendant Yung has expressed his consent to removal by a letter to the parties to the action

dated April 20, 1993. However, the state law claims that remain against Defendant Yung will nonetheless be remanded as discussed above.