Arthur DAPONTE and Marcia Daponte, Plaintiffs,

v.

MANFREDI MOTORS INC., Manfredi Management Corp., Staten Island Motors Inc., Manfredi Auto Central LLC, Nicholas "Nick" Manfredi, individually and in his official capacity, and Corrado "Joe" Manfredi, individually and in his official capacity, Defendants.

No. 01 CV 2734(SJ).

United States District Court, E.D. New York.

Sept. 9, 2004.

Quesada & Moore, LLP, By Victoria Quesada, West Hempstead, NY, for Plaintiff.

Fisher & Phillips, LLP, By Mairen Claire Kelly, Atlanta, GA, for Defendant.

Rains & Pogrebin, P.C., By James Patrick Clark, Mineola, NY, for Defendant.

## MEMORANDUM AND ORDER

JOHNSON, Senior District Judge.

Plaintiffs Arthur DaPonte ("A. DaPonte") and Marcia DaPonte ("M. DaPonte") (collectively, "Plaintiffs") brought the current action against Defendants Manfredi Motors, Inc., Manfredi Management Corp., Staten Island Motors, Inc., Manfredi Auto Central, LLC, Nicholas "Nick" Manfredi, and Corrado "Joe" Manfredi (collectively, "Defendants"). Currently before this Court are Defendants' motion for summary judgment and Defendants' motion to strike portions of Dr. Mark Dennis DeLacure's affidavit. This Court listened to oral argument on October 17, 2003. For the reasons set forth herein, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Because this Court no longer has jurisdiction over the remaining state law claims, the motion to strike is moot.

## BACKGROUND

On October 5, 2001, Plaintiffs brought this action against Defendants. Arthur DaPonte, a former employee of Defendants, alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; New York State Human Rights Law ("NYSHRL"), N.Y. McKinney's Exec. Law § 296 et seq.; and New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8–107 et seq., as well as common law claims for negligent and fraudulent misrepresentation. Marcia DaPonte, Arthur DaPonte's wife, brought a common law claim for loss of consortium. On December 2, 2002, Arthur DaPonte died of laryngeal cancer. Marcia DaPonte continues to litigate this action on behalf of herself and her deceased husband. For the sake of simplicity, the Court will refer to Arthur DaPonte and Marcia DaPonte individually as "A. DaPonte" and "M. DaPonte," and collectively as "Plaintiffs." The following is a brief history of the facts underlying this case.

A. DaPonte was hired as a car salesperson by Defendant Staten Island Motors on two separate occasions. He was initially hired in 1997, fired in 1998, and then re-hired in July 1999. Plaintiffs allege that before A. DaPonte was re-hired, Ira Romano, Staten Island Motors' Sales Manager, promised him health insurance within 90 days after commencing employment. (Compl. ¶¶ 53, 55–56; A. DaPonte Dep. at 94.) Plaintiffs claim that on the basis of that oral promise, A. DaPonte accepted the offer of employment. (Compl. ¶ 53.) Between November 1999 and April 2000, A. DaPonte repeatedly requested medical benefits, but was first issued medical coverage on April 1, 2000. (Compl. ¶¶ 57–58,

67.) Throughout this period, A. DaPonte never missed work for health-related reasons and believed he was in good health. (A. DaPonte Dep. at 142, 147.)

In December 1999, A. DaPonte began spitting up phlegm, his voice became raspy, and he frequently needed to clear his throat. (*Id.* at 120–21; Pls.' Mem. of Law in Opp'n to Summ. J. ("Pls.' Opp'n") at 3.) In early April 2000, shortly after he was issued medical coverage, A. DaPonte was diagnosed with throat cancer, for which he underwent surgery on April 28, 2000. Although Plaintiffs claim that A. DaPonte's employment was terminated in May or June 2000, the record clearly demonstrates that his job remained intact for more than one year after April 28, 2000, the date on which he went out on medical leave. (Ferrante Dep. at 48–49; Defs.' Ex. 11.)

## DISCUSSION

### I. Summary Judgment Standard

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the movant to establish the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

Once the movant has made a properly supported motion for summary judgment,

the burden shifts to the nonmoving party to present "significantly probative" supporting evidence showing that there is a material factual issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the underlying facts in the light most favorable to the plaintiff, resolving all ambiguities and drawing all inferences in his favor. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 469 (2d Cir.1999).

### II. ADA, NYSHRL, and NYCHRL Claims [1]

A. DaPonte alleges that: (1) at the time A. DaPonte was denied medical insurance by Defendants, he was suffering from symptoms of throat cancer, and that this constituted a disability under 42 U.S.C. § 12102(2)(A); (2) alternatively, A. DaPonte was disabled under 42 U.S.C. § 12102(2)(C) because Defendants perceived him as suffering from an impairment affecting his larynx; (3) Defendants' decision to withhold medical benefits was related to A. DaPonte's disability and/or perceived disability; and (4) in denying A. DaPonte medical benefits, Defendants denied A. DaPonte a reasonable accommodation for his disability. (Compl. ¶¶ 76–93.) Defendants counter that: (1) A. DaPonte was not disabled within the meaning of the

---

1. In their opposition brief, Plaintiffs "withdraw those portions of Claims One and Two of their Amended Complaint which seek to hold defendants Corrado Manfredi and Nicholas Manfredi individually liable under the ADA." (Pls.' Opp'n at 16.) Plaintiffs also withdraw their third claim for relief. (*Id.* at 24.) The Court therefore dismisses Claim Three in its entirety and Claims One and Two as to individual Defendants Corrado Manfredi and Nicholas Manfredi. .

ADA at any time prior to attaining health benefits on April 1, 2000; (2) Defendants did not perceive A. DaPonte as suffering from a disability until the day before his surgery; (3) even if A. DaPonte was disabled, Defendants' decision to withhold benefits was unrelated to his disability; and (4) medical benefits are not one of the "reasonable accommodations" that employers are required to provide to disabled employees. (Defs.' Mem. of Law in Supp. of their Mot. for Summ. J. ("Defs.' Mot.") at 11–14.) This Court finds that Defendants must prevail as a matter of law because Plaintiffs have failed to establish a *prima facie* case of disability discrimination under the ADA.

To make out a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir.2001). In the case at bar, Defendants do not dispute that they are subject to the ADA.

■ The ADA defines a disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). To prove that he is disabled under § 12102(2)(A), a plaintiff must prove that (1) he suffers from an impairment (2) which affects a major life activity, and (3) which "substantially limits" the major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

■ Here, even if Plaintiffs could prove that A. DaPonte suffered from an impairment of his larynx which affected the major life activity of speaking, Plaintiffs could not prove that his ability to speak was "substantially limited." There is no dispute that, over the course of his employment, A. DaPonte experienced a change in the quality and tone of his voice, increased frequency in coughing, hoarseness, and throat clearing, and weight loss. However, the record is devoid of any evidence showing that prior to his operation on April 28, 2000, A. DaPonte's capacity to speak was substantially limited or that he could not communicate with others. As A. DaPonte testified in his deposition, he continued to work in his normal capacity as a car salesman until April 27, 2000—the day before his operation. (A. DaPonte Dep. at 151.) He continued to smoke and even increased his smoking as his anxiety about his health increased. (*Id.*) In fact, as of April 3, 2000, he believed he was in good health. (*Id.* at 147.) Upon considering the evidence in the record, this Court finds that A. DaPonte's speech-related impairment did not substantially limit his major life activity of speaking. *See Hooper v. St. Rose Parish*, 205 F.Supp.2d 926, 929 (N.D.Ill.2002); *Ross v. GTE Directories Corp.*, 73 F.Supp.2d 1342, 1346–47 (M.D.Fla.1999).

■ Alternatively, Plaintiffs argue that A. DaPonte was disabled under 42 U.S.C. § 12102(2)(C) because Defendants perceived him as suffering from an impairment affecting his larynx. A. DaPonte would fall within this subsection if Defendants made an employment decision based on a "physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton v. United Air Lines*, 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Plaintiffs' arguments demonstrate, at best, that Defendants perceived a difference in A. DaPonte's voice as compared with that of the general population. *See Hooper,*

205 F.Supp.2d at 930. This argument, however, falls far short of demonstrating that Defendants regarded A. DaPonte as having a substantial limitation in the life activity of speaking.

■ Because Plaintiffs have failed to show that A. DaPonte was disabled for ADA purposes, they have failed to make out a *prima facie* case of disability discrimination under the ADA. "The legal standards for discrimination claims under the ADA and under New York state and city law are essentially the same, except to the extent that the New York statutes support a broader definition of 'disability,' a distinction not relevant here." *Woolley v. Broadview Networks, Inc.,* No. 01 CV 2526, 2003 WL 554754, at *8 (S.D.N.Y. Feb.26, 2003) (*citing Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 147 (2d Cir.1998)). Accordingly, this Court's discussion of Plaintiffs' ADA claims also applies to their state and city claims. Defendants' motion for summary judgment is thus granted as to the ADA, NYSHRL, and NYCHRL claims.[2]

## III. State Law Tort Claims

■ Defendants also move for summary judgment on the ground that Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* A claim styled as a state common law cause of action is preempted under ERISA "if it 'relates to' an employee benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), and falls within the scope of the statute's civil enforcement provisions, found in section 502(a), 29 U.S.C. § 1132(a)." *Smith v. Dunham–*

*Bush, Inc.,* 959 F.2d 6, 8 (2d Cir.1992) (citation omitted). Defendants argue that "Plaintiff's fraudulent inducement misrepresentation and/or negligence claims, and any claim for emotional distress or for damages under state law, are preempted under ERISA § 514(a)." (Defs.' Mot. at 24.) Plaintiffs contend that because they do not seek benefits under any plan, but rather damages from A. DaPonte's employer for personal injuries sustained as a result of the absence of promised health coverage, their claims do not "relate to" Defendants' health benefits plan under § 514(a). (Pls.' Opp'n at 7–8.)

### A. Jurisdiction

■ Before considering the question of whether Plaintiffs' state law claims are preempted by ERISA, this Court must first decide whether it has jurisdiction to consider these claims. "While the statute governing supplemental jurisdiction, 28 U.S.C. § 1367, does not require dismissal of pendent state-law claims where all of the federal claims have been dismissed, see id. § 1367(c)(3), 'if it appears that the state law issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state law claims may be dismissed without prejudice and left for resolution to state tribunals.'" *Giordano v. City of New York,* 274 F.3d 740 (2d Cir.2001) (*citing United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The Supreme Court has cautioned, however, that "[t]here may ... be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is

---

**2.** Defendants argue that Plaintiffs' NYSHRL and NYCHRL claims fail as a matter of law because they are preempted by ERISA. (Defs.' Mot. at 25.) Plaintiffs counter that these claims are not preempted because they are coincident with the ADA. (Pls.' Opp'n at

15–16.) The Court finds it unnecessary to reach the preemption question on these claims, since Plaintiffs have failed to make a *prima facie* case of disability discrimination under both the NYSHRL and NYCHRL. (*See infra* at 356–57.)

particularly strong." *Gibbs*, 383 U.S. at 727, 86 S.Ct. 1130. One of those situations involves the question of federal preemption. *Id.* at 727, 729, 86 S.Ct. 1130. Indeed, "the question whether the permissible scope of [a] state claim [is] limited by the [federal] doctrine of pre-emption afford[s] a special reason for the exercise of pendent jurisdiction; the federal courts are particularly appropriate bodies for the application of pre-emption principles." *Id.* at 729, 86 S.Ct. 1130.

■ For these reasons, this Court chooses to exercise limited supplemental jurisdiction over Plaintiffs' state law claims. The Court will decide whether these claims are preempted by ERISA. If the Court deems the state law claims to be preempted by ERISA, Plaintiffs will be given leave to amend their complaint to add ERISA claims. If the Court concludes that the state law claims are not preempted, it will dismiss them without prejudice and leave them for resolution in the state tribunal. *See id.* at 726–27, 86 S.Ct. 1130.

## B. Fraudulent and Negligent Misrepresentation Claims

■ "The Supreme Court has consistently afforded a broad, though not absolute, reading" to ERISA's preemption provision, § 514(a). *Smith*, 959 F.2d at 9. Under this reading, a state law "relates to" a benefit plan if it "has a connection with or reference to such a plan," whatever the state law's underlying intent. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490

(1983)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, "the word 'related' must not be taken literally." *Cerasoli v. Xomed, Inc.*, 952 F.Supp. 152, 156 (W.D.N.Y.1997) (citation omitted). "State law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Id.* (citation omitted); *Shaw*, 463 U.S. at 100, 103 S.Ct. 2890.

■ The issue of whether a claim alleging benefit-related fraud or misrepresentations is preempted by ERISA is far from clear-cut. *See Id.* at 157. While most courts in the Second Circuit have held that such claims "relate to" a benefit plan and are therefore preempted, *see, e.g., Smith*, 959 F.2d at 10; *De Pace v. Matsushita Elec. Corp. of America*, 257 F.Supp.2d 543, 567–573 (E.D.N.Y.2003); *Ullrich v. Linotype–Hell Co.*, 187 F.Supp.2d 68, 72–73 (E.D.N.Y.2002); *Cerasoli*, 952 F.Supp. at 157–161; *Hamburger v. Southern New England Telephone Co.*, 97 CV 2392, 1998 WL 241214 at *3 (D.Conn. May 6, 1998), several courts have reached the opposite conclusion, *see, e.g., Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22–23 (2d Cir.1996); *McNamee v. Bethlehem Steel Corp.*, 692 F.Supp. 1477 (E.D.N.Y.1988); *Sandler v. New York News Inc.*, 721 F.Supp. 506, 512–15 (S.D.N.Y.1989); *Isaacs v. Group Health, Inc.*, 668 F.Supp. 306, 312–14 (S.D.N.Y. 1987). In distinguishing between these cases and applying them to the case at hand, this Court will rely on the principles established in *Cerasoli*, 952 F.Supp. at 157–159, and *Sandler*, 721 F.Supp. at 514–15; [3] *see also* Frank J. Cavico, *Fraudulent,*

---

[3]. Defendants incorrectly claim that *McNamee v. Bethlehem Steel Corp.*, 692 F.Supp. 1477, was overruled by *Smith v. Dunham–Bush*, 959 F.2d 6. (Defs.' Reply in Supp. of their Mot. for Summ. J. ("Defs.' Reply") at 10.) Following *Cerasoli v. Xomed*, 952 F.Supp. 152

(W.D.N.Y.1997), this Court finds that *McNamee* is distinguishable from *Smith*. *See supra.*

Defendants also mistakenly contend that *Geller* is inapplicable to the case at bar because it is grounded upon 29 U.S.C. §§ 1132(a)(2), 1109. (Defs.' Reply at 6–7.)

*Negligent, and Innocent Misrepresentation in the Employment Context: The Deceitful, Careless, and Thoughtless Employer,* 20 Campbell L.Rev. 1, 77–83 (1997).

The first question this Court must ask is whether the alleged misrepresentations relate directly to A. DaPonte's benefits under Defendants' medical benefits plan. *Cerasoli,* 952 F.Supp. at 157; *Sandler,* 721 F.Supp. at 514. Plaintiffs here do not claim that Defendants failed to pay benefits to which A. DaPonte was entitled pursuant to a plan. Rather, Plaintiffs have sued Defendants for personal injury damages alleged to have arisen from A. DaPonte's reliance on misrepresentations Defendants made concerning medical benefits before he commenced reemployment.

Plaintiffs' claims closely resemble those of the plaintiffs in *McNamee v. Bethlehem Steel Corp.,* 692 F.Supp. 1477, and *Sandler v. New York News Inc.,* 721 F.Supp. at 514–15. In *McNamee,* the plaintiff worked for Bethlehem Steel Corporation ("Bethlehem") from 1951 to 1965 (the defendant claimed 1963), when he was laid off. In 1978, he was offered reemployment with the defendant. McNamee claimed that as a condition of reemployment, Bethlehem agreed to "make such arrangements as were necessary to have his 'break in service bridged' from 1965 to 1978 and to provide plaintiff with sufficient employment time in order to qualify for a fully vested pension." [4] *McNamee,* 692 F.Supp. at 1478. Upon commencing reemployment, McNamee claimed, Bethlehem "breached the agreement by failing to arrange for a bridge in his service and by laying [McNamee] off before he could accrue enough employment time to qualify

In fact, the Second Circuit's discussion in *Geller* about whether the plaintiffs' state common law claims of fraud were preempted under ERISA informs this Court's analysis in the present case. *Geller,* 86 F.3d at 22–23.

for pension benefits." *Id.* The court found that while McNamee's claims "clearly relate[d] in subject matter to defendant's pension plan, a resolution of the claims [would] neither 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan.'" *Id.* at 1480 (*citing Gilbert v. Burlington Indus.,* 765 F.2d 320, 327 (2d Cir. 1985)). Accordingly, the court found that the state law claims were not preempted under ERISA. *McNamee,* 692 F.Supp. at 1480.

In *Sandler,* the pension manager of the New York News ("the News") incorrectly advised the plaintiff, a News employee, that he would receive $1,049 per month in retirement benefits if he accepted early retirement in connection with an employment buyout offer. 721 F.Supp. at 509. In fact, under the terms of the plan, the monthly pension amount owed to him was $774.49. *Id.* Sandler accepted the buyout offer, resulting in his voluntary termination. *Id.* at 508–09. The pension manager's misrepresentation to Sandler, upon which Sandler relied in deciding to accept the buyout and to retire early, resulted in significant negative economic consequences for Sandler and his family. *Id.* at 509–10. Sandler sued the News for, *inter alia,* negligent misrepresentation, claiming he would not have relinquished his job and accepted the News' buyout offer had he been provided with accurate information about the financial consequences of accepting that offer. *Id.* at 513–14. The Court found that Sandler brought suit "not as a participant, seeking recovery of benefits from the [pension] Plan, but as an employee seeking economic damages from his em-

4. As the *McNamee* court explained, "[a]n employer 'bridges' a break in service ... by treating, for pension purposes, the employee's past service time as part of his period of continuous service with the employer." 692 F.Supp. at 1478.

ployer alleged to arise from his relinquishment of his position at the paper. The predicate for those damages [was] not wrongful benefit denial, but rather the allegation that plaintiff detrimentally relied on false financial information negligently communicated to him by his employer ..." *Id.* at 512. Because Sandler's negligent misrepresentation claim (1) did not seek to recover benefits under a welfare plan, (2) was "premised upon [the News'] misrepresentation that was made outside the routine course of [plan] administration and could as easily have concerned economic benefits unrelated to ERISA as it did covered benefits," and (3) posed no "genuine threat of interference with the administration of primary plan functions," the court found that the claim was not preempted by ERISA.[5] *Id.* at 514–15.

Plaintiffs' claims are distinguishable from the claims set forth in *Smith,* 959 F.2d 6, a case on which Defendants rely. In that case, the plaintiff, an employee of Dunham–Bush in the United Kingdom for 33 years, was asked to transfer to the company's Connecticut affiliate. When Smith expressed concerns about the inferiority of the Connecticut affiliate's pension plan, Dunham–Bush's president assured him that the company would provide him with a benefits package comparable to what he would have received upon retirement in the United Kingdom. *Id.* at 7. On the basis of that oral representation, Smith agreed to relocate to Connecticut. *Id.* When Dunham–Bush failed to follow through on its representation, Smith brought suit to enforce the promise. The Second Circuit found that Smith was seeking to supplement the pension plan's express provisions and secure an additional

benefit, and that his cause of action therefore related "not merely to his benefits, but to the essence of the plan itself." *Id.* at 10. Accordingly, the court held that Smith's state law claims "related to" a plan within the meaning of § 514(a) and were preempted by ERISA. *Id.; see also Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir.1992) (citations omitted) (finding that the plaintiffs' common law fraud claim was preempted on the ground that the claim had "as a critical factor in establishing liability the existence of a plan and duties similar to those imposed by ERISA.").

In the case at bar, the gravamen of Plaintiffs' claim is that A. DaPonte would not have agreed to reemployment with Defendants had they disclosed to him that he would not be eligible for health benefits within 90 days of commencing reemployment. This case resembles *McNamee* and *Sandler,* in that the plaintiffs in all three cases were receiving no plan benefits, and made major employment decisions—to commence or terminate employment—based on their employers' false promises of future benefits. In contrast, the plaintiff in *Smith* made a less monumental employment decision—to transfer to an affiliate office—and in so doing, attempted to supplement the benefits he already was receiving. Although this is a subtle distinction, the Court finds that Plaintiffs have claimed misrepresentations with respect to a collateral employment agreement, rather than with respect to Defendants' benefits plan. *See McNamee,* 692 F.Supp. at 1479.

A second and related question for this Court to consider is the nature of the harm flowing from A. DaPonte's reliance on

---

5. The *Sandler* court also found an important factor to be whether the state law claim was directed against the plan administrators or the employer. 721 F.Supp. at 514. The Second Circuit has subsequently found state law claims to be preempted notwithstanding the fact that the claims were asserted only against the plaintiff's employer. *See Smith,* 959 F.2d at 12; *Cerasoli,* 952 F.Supp. at 158.

these alleged misrepresentations. *Cerasoli*, 952 F.Supp. at 158. When a plaintiff, in reliance on his employer's statements concerning benefits, takes or fails to take some action that does not directly involve benefits, the harm to the plaintiff consists of economic loss, and not simply loss of coverage. *Id.; see also Sandler*, 721 F.Supp. at 508, *McNamee*, 692 F.Supp. at 1478. Here, Plaintiffs claim that as a result of his reliance on Defendants' fraudulent and negligent misrepresentations, A. DaPonte accepted reemployment with Defendants and subsequently suffered "severe mental, emotional and physical injury, pain and suffering, loss of enjoyment of life and loss of earning capacity." (Compl. ¶¶ 109, 116.) This case is therefore distinguishable from other cases in which the alleged harm was the plaintiffs' lack of coverage or failure to secure additional benefits under a benefits plan. *See, e.g., Cerasoli*, 952 F.Supp. at 158; *Smith*, 959 F.2d at 10.

Finally, the Court must inquire as to whether allowing Plaintiffs to pursue their detrimental reliance claims "would pose some genuine threat of interference with the administration of primary plan functions." *Sandler*, 721 F.Supp. at 515. As in *Sandler*, the parties in this case have not identified such a threat, and any interference that might arise would be of "a procedural sort"—i.e. in the future, Defendants might represent more accurately the benefits options available to potential employees. *Id.* at n. 9. Allowing Plaintiffs to pursue their claims against Defendants would have "no substantive effect upon a plan participant's eligibility for a benefit and the amount of that benefit." *Id.* (citation omitted). Thus, "there is reason to believe that claims such as this one, which arise under hopefully unique circumstances only remotely related to central plan functions, will have no more than a minimal, indirect impact on the adminis-

tration of benefit plans." *Id.* (citation omitted).

Although this is a close case, the Court finds that Plaintiffs' misrepresentation claims are not preempted by ERISA. The allegedly false representation was made to A. DaPonte in the context of an pre-employment interview and it concerned the terms of his employment rather than the administration of health benefits. Any relation between the state law claim and Defendants' health benefits plan is "too tenuous, remote, [and] peripheral" to warrant ERISA preemption. *See Sandler*, 721 F.Supp. at 511, 515 n. 9; *Shaw*, 463 U.S. at 100, 103 S.Ct. 2890; *Geller*, 86 F.3d at 23 ("[t]he plaintiffs' common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans."). Moreover, Plaintiffs' state law claim does not arise out of any action taken in the execution, implementation, or administration of the plan, and resolution of the claim would not directly affect the primary administration of benefits function under the plan. *See* Cavico, *Fraudulent, Negligent, and Innocent Misrepresentation in the Employment Context* at 80–82; *Geller*, 86 F.3d at 23 ("the essence of the plaintiffs' fraud claim does not rely on the pension plan's operation or management"). Finally, allowing Plaintiffs to pursue their fraudulent and negligent misrepresentation claims would in no way compromise Congress' purpose in enacting ERISA, and would not impede federal control over the regulation of employee benefit plans. *Geller*, 86 F.3d at 23. Therefore, this Court finds that Plaintiffs' state law claims for fraudulent and negligent misrepresentation are not preempted by ERISA. The Court dismisses these claims without prejudice to them being brought in an appropriate state forum. *Giordano*, 274 F.3d at 755.

**362**

### C. Loss of Consortium

■ M. DaPonte also alleges that Defendants, in failing to provide plan benefits to A. DaPonte, have "deprived [her] of the society, services, affection, consortium and companionship services of her husband." (Compl. ¶ 120.) M. DaPonte is not a plan participant, and an ERISA plan is not implicated in her loss of consortium claim. As with the misrepresentation claims, M. DaPonte could recover for loss of consortium with only tangential reference to Defendants' health benefits plan or to any actions taken by Defendants pursuant to that plan. Thus, for the reasons stated above, the Court finds that M. DaPonte's loss of consortium claim is not preempted by ERISA. *See Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 974 (S.D.N.Y. 1994); *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,* 36 F.Supp.2d 560, 582 (E.D.N.Y.1999). This Court dismisses the loss of consortium claim without prejudice to that claim being brought in state court. *Giordano,* 274 F.3d at 755.

### CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiffs' fraudulent misrepresentation, negligent misrepresentation, and loss of consortium claims are dismissed without prejudice to them being adjudicated in state court. Defendant's motion to strike portions of Dr. Mark Dennis DeLacure's affidavit is moot. The Clerk of the Court is directed to close this case.

SO ORDERED.