Timothy ROSS, Sr., Plaintiff,

v.

**GTE DIRECTORIES CORP.,**
**Defendant.**

No. 98–1049–CIV–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 20, 1999.

16. In Williams' case, six years.

Randall V. Shanafelt, Law Office of Randall V. Shanafelt, St. Petersburg, FL, for plaintiff.

Lansing C. Scriven, Emily Pouzar Jenkins, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following:

Dkt. # 15 Defendant's Motion for Summary Judgment

Dkt. # 17 Deposition of Nancy Hannan

Dkt. # 19 Deposition of Sharon Kaye

Dkt. # 21 Deposition Susan Schwartz

Dkt. # 23 Deposition of Alan Gall

Dkt. # 25 Deposition of Timothy Ross, Sr.

Dkt. # 28 Plaintiff's Response

Dkt. # 31 Declaration of Timothy Ross, Sr.

## FACTUAL BACKGROUND

Defendant, GTE Directories Corp., hired Plaintiff, Timothy Ross, Sr., a black male, in 1992. Plaintiff remained employed by Defendant until Defendant terminated him on or about August 24, or 25, 1997.

Plaintiff worked for Defendant as a press helper in Defendant's printing facility in St. Petersburg, FL. Plaintiff's job duties required that he stand at a conveyor belt, bundle printed directory pages, and then place them into a machine for further processing. While performing this duty, Plaintiff was also required to report any irregularities in the printing procedures to his supervisors. The nature of Plaintiff's position required him to perform both of these tasks simultaneously. Plaintiff contends that because of this simultaneous responsibility, he could not leave his physical position at the conveyor belt. To perform both of these tasks in a practical manner, Plaintiff contends that he needed to verbally communicate the irregularities to his supervisors from his location at the conveyor belt.

While performing his duties, Plaintiff routinely raised his voice to communicate printing irregularities to his superiors. Plaintiff raised his voice to ensure that his supervisors could hear his reports over the loud noises emanating from the facilities' press machines. The Court also notes that the printing facility contained dust, chemicals, and fumes.

In early 1994, Plaintiff began developing severe voice hoarseness and shortness of breath. After visiting a physician, Plaintiff was diagnosed with bilateral vocal cord polyps. Plaintiff underwent surgery for removal of the polyps in May, 1994. Following the surgery, Plaintiff returned to work. In May, 1997, Plaintiff was diagnosed with recurrent bilateral vocal cord

polyps. After the second surgery, Plaintiff's physician recommended that Plaintiff be removed from environments that required him to abuse his voice or that caused him to cough. As stated earlier, Plaintiff routinely raised his voice above the loud noises of the facilities' environment to communicate with his supervisors. Additionally, Plaintiff alleges that he often coughed to clear his throat because of the dust and fumes present in the environment.

After Plaintiff's second surgery, and following his physician's recommendation, Plaintiff approached Defendant and requested a transfer to a new position that would not subject him to the environment that caused his condition. Defendant alleges that Plaintiff requested a permanent light duty position. During a meeting on approximately July 2, 1997 between Defendant managers and Plaintiff, Plaintiff was told that no permanent light duty positions existed at that time. Defendant went on to add that Defendant would accommodate Plaintiff's request by allowing him to wear a mask while performing his duties as a press helper. Additionally, Defendant's Human Resource Manager Laura Strickland testified that other accommodations were offered such as "stepping outside the noise, and taking the ear plugs out, of writing the communications down," although notes from the meeting only refer to the option of wearing a mask.

Approximately two weeks after the July 2 meeting, Defendant contacted Plaintiff and instructed him to report for light duty work in the pre-press area on the following Monday. Plaintiff reported on Monday as instructed, and began working in the pre-press area. Approximately two hours into Plaintiff's shift, Defendant instructed Plaintiff to leave the building because his presence at the Defendant's facility was contrary to Plaintiff's physician's restrictions. Plaintiff contends that working in the pre-press area would not violate his physician's work restrictions because the pre-press area would not subject Plaintiff to fumes or dust, and would not require him to raise his voice.

On August 20, 1997, Defendant mailed a letter to Plaintiff. The letter mailed to Plaintiff stated that Plaintiff had exhausted his eligible leave time, and that if Plaintiff did not return to work by August 24, 1997, Defendant would consider Plaintiff to have abandoned his position. Defendant mailed the letter to the wrong address. Plaintiff contends that he did not report for work on the 24th because he did not receive the letter. Defendant asserts that the incorrect mailing is immaterial because upon learning of the returned letter, Defendant called Plaintiff, and Plaintiff confirmed that he did not intend to return to work at the printing plant and would pursue other opportunities.

In September, 1997, Defendant placed a white employee on temporary light duty in the pre-press area to recover from knee surgery. Plaintiff alleges that Defendant's action shows that light duty positions were available.

After being terminated, Plaintiff filed suit against Defendant under the ADA and Title VII.

### STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trail.'" *Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences can be drawn from that party's evidence. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Evans v. Meadow Steel Products, Inc.,* 579 F.Supp. 1391, 1394 (N.D.Ga.1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989) (citing *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548).

## DISCUSSION

### I. ADA CLAIM

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a). The Eleventh Circuit states that for a plaintiff to establish a *prima facie* case for disability discrimination, the plaintiff must show:

(1) that [he] has a disability;

(2) he is a qualified individual; and

(3) he was subjected to unlawful discrimination as the result of his disability.

*Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir.1996). Defendant argues that no genuine issue of material fact remains with regard to whether Plaintiff has a "disability," and that Defendant is therefore entitled to summary judgment as a matter of law.

### A. Disability

Defendant argues that Plaintiff does not have a disability in accordance with the ADA. The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff alleges that he is limited substantially in both the major life activity of speaking and working. Additionally, Plaintiff asserts that Defendant had a record of such impairment.

### 1. Physical or Mental Impairment That Substantially Limits a Major Life Activity

In analyzing Plaintiff's situation, the Court concludes that Plaintiff's vocal polyps qualify as an impairment within the meaning of the ADA. The ADA defines a "mental or physical" impairment to mean:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1614.203(a)(2) (1998).

In this case, Defendant argues that Plaintiff's impairment does not substantially limit any major life activities such as speaking or working. The ADA defines the major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1998). An impairment

"substantially limits" a major life activity if the individual is:

> unable to perform a major life activity that the average person in the general population can perform [or is] significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630(j)(1) (1998).

### 2. Major Life Activity of Speaking

■ Defendant argues that Plaintiff's condition does not substantially limit him in the major life activity of speaking. Defendant points to the fact that Plaintiff can still speak in normal environments even though he speaks with some hoarseness, and is prevented from routinely raising his voice pursuant to his physician's orders. The factors to "be considered in determining whether an individual is substantially limited in a major life activity" are as follows:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (1998). When considering these factors, the evidence shows that Plaintiff did not have an impairment that substantially limited him in the major life activity of speaking.

First, it is necessary to evaluate the "nature and severity" of Plaintiff's speaking impairment. Plaintiff developed vocal cord polyps that caused him hoarseness in his voice and shortness of breath. After undergoing surgery to remove the polyps, Plaintiff continued to exhibit a raspy sound in his voice, but could otherwise speak normally in a standard environment. In addition, Plaintiff's own physician testified

that a person who had undergone surgery to remove vocal cord polyps would have no reduced ability to speak in normal conversation levels. Plaintiff's only voice restriction was that he could not speak loudly, or was instructed not to by his physician.

Plaintiff argues that the severity of the impairment does substantially limit him in the major life activity of speaking. Plaintiff attempts to prove this limitation by stating that he is permanently foreclosed from raising his voice, and continues to have a persistent "raspy" sound to his voice. Additionally, Plaintiff asserts that the type of speech an "average person in the general population can perform with little or no difficulty" is impossible for him. Further, Plaintiff claims he is foreclosed from entering environments that may cause him to cough because coughing would contribute to his impairment.

In *Crawley v. Runyon*, 1998 WL 355529 (E.D.Pa. June 30, 1998), the Court examined a very similar fact pattern. As in the current case, the plaintiff in *Runyon* also suffered from a voice impairment that prevented him from speaking loudly. *Runyon* at *5, *6. After being terminated, Crawley filed suit against Runyon for disability discrimination under the ADA. *See id.* at *1. The Court denied the plaintiff's claim and, among other rulings, held that Plaintiff's voice impairment did not substantially limit the major life activity of speaking. *See id.* at *7. The Court reasoned that because the plaintiff's voice volume was only "mildly reduced," was "within normal limits," and was not "significantly restricted . . . as compared to [that of] the average person in the general population," that a substantial limitation on the activity of speaking did not exist. *Id.* at *6, *7. Additionally, the *Runyon* Court stated that "[d]ifficulty speaking over industrial machinery, . . . and vocal tension after speaking for long periods of time . . . are not experiences that readily distinguish Plaintiff from the average person." *Id.* at 6. The Court also stated that

"[i]mpairments that result in only mild limitations are not disabilities." *Id.*

In the present case, because the only impairment Plaintiff suffers from is his inability to speak loudly, and his physician's restriction from entering dusty places, the Court must follow the reasoning in *Runyon* and find that the "nature and severity" of Plaintiff's impairment is not enough to substantially limit the his major life activity of speaking. *See id.* at *7. The first factor therefore heavily weighs in favor of finding that a substantial limitation does not exist.

After examining the nature and severity of the impairment, the Court must then look at the duration or expected duration of the impairment. 29 C.F.R. § 1630.2(j)(2) (1998). The duration of, or expected duration of, Plaintiff's voice impairment could be forever. As of June 15, 1999, the date of Plaintiff's deposition, Plaintiff still exhibited a "raspy" quality in his voice. Additionally, Plaintiff's physician stated that he should permanently avoid attempting to speak loudly. The second factor therefore indicates that a slight limitation exists.

The third factor requires that this Court examine the "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (1998). It must be determined that Plaintiff's impairment, that he cannot speak loudly, is permanent. This is because the Plaintiff's physician stated that he should no longer attempt to speak loudly. The third factor therefore indicates that a slight limitation exists.

After weighing all three factors together, the Court concludes that the Plaintiff's voice impairment does not substantially limit his major life activity of speaking. The Court finds that even though Plaintiff's impairment may last forever, the impairment itself is not substantial enough to limit Plaintiff's major life activity of speaking.

### 3. Major Life Activity of Working

Additionally, Plaintiff argues that his voice impairment substantially limits his major life activity of working. Plaintiff maintains that the need to speak loudly in Defendant's facility caused his voice impairment. Consequently, Plaintiff contends that his voice impairment substantially limits his ability to work. The EEOC provides additional guidance to determine when the major life activity of working is substantially limited.

The major life activity of working is substantially limited when:

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training knowledge, skills or abilities, within that geographical area from which the individual is also disqualified because of the im-

pairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3) (1998). Utilizing the language provided by the regulation, Plaintiff argues that his major life activity of working is substantially limited because of his inability to perform either a class of jobs or a broad range of jobs in various classes.

Plaintiff claims that his inability to raise his voice to communicate precludes him from an entire class of jobs. To demonstrate his point, Plaintiff cites several examples of jobs that he is allegedly precluded from working due to his voice impairment. These include "manufacturing, construction, drilling, agriculture industry, and any other job which would require Plaintiff to verbally communicate above the noise of machinery." Aside from making a broad generalization that he is precluded from these jobs, Plaintiff offers no evidence that he could not work in these fields without raising his voice. Plaintiff infers that all positions within these fields require the workers to raise their voices.

In *Crawley v. Runyon*, 1998 WL 355529 (E.D.Pa. June 30, 1998), Plaintiff claimed that his vocal problems prevented him from performing an entire "class of jobs or a broad range of jobs in various classes." *Runyon* at *7. Plaintiff claimed that noise and dust at his work site worsened his condition, and thus prevented him from working there. *See id.* The Court held that the Plaintiff's impairment did not prevent him from performing an entire class of jobs. *See id.* The Court recognized that the Plaintiff's vocal problems only interfered with the time and location at which he could work. *See id.* The Court added that "[t]he inability to perform a particular job at a particular time and place is not a substantial limitation on the major life activity of working." *Id.* Furthermore, the Court stated that the "inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to a substantial limitation of activity of working." *Id.*

As in *Runyon*, Plaintiff's voice impairment in the present case only interferes with the location at which he can work. *Runyon* at *7. Plaintiff here cannot apparently work as a press helper because he must raise his voice to communicate over the noise of the presses. Plaintiff is not prevented from working in a "class of jobs," such as an environment that exhibits noise, but is rather only restricted from working in "particular jobs" that require him to raise his voice to communicate. Therefore, Plaintiff's inability to perform the particular job of press helper is not a substantial limitation on the major life activity of working. Additionally, as *Runyon* pointed out, Plaintiff's inability to perform one aspect of his job, verbally communicating printing irregularities, while retaining the ability to perform his work in general, does not amount to a substantial limitation of the activity of working. *See id.* This Court therefore concludes that the Plaintiff is not substantially limited in the major life activity of working.

### 4. Record of Impairment

In addition to alleging that his voice impairment substantially limits him in the major life activities of speaking and working, Plaintiff contends that he also qualifies as disabled under the ADA because Defendant has a record of such impairment. The EEOC explains that: "Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1998). The only evidence Plaintiff provides in support of such a record is that Defendant's resource manager stated "I knew that [Plaintiff] had a history of throat polyps. I can't say that I recall an operation. I know that he had a history of throat issues."

In *Skinner v. Atlantic Marine, Inc.*, 1997 WL 602446 (S.D.Ala. June 23, 1997), the plaintiff argued that defendant had a record of his impairment because defen-

dant was aware of his coronary problems and surgery. *See Skinner* at *5. The *Skinner* Court held that this evidence alone was insufficient to find that the defendant had a record of substantial impairment that would establish him as disabled within the meaning of the ADA. *See id.* In its reasoning, the Court explained that the impairment listed in the record must be one that would substantially limit one or more of the individual's major life activities. *See id.* at *6. The Court found that the plaintiff's mere showing that people knew about his surgery did not amount to a record indicating that a substantially limiting impairment existed. *See id.* The Court further reasoned that even if the defendant's knowledge equated to a record of impairment, a disability would still not exist under the ADA because the Court found that the surgery was not a substantially limiting impairment. *See id.*

■ In the current case, the only evidence offered by Plaintiff that a record of impairment exists is that the Defendant was aware he had throat problems. As in *Crawley v. Runyon*, 1998 WL 355529 (E.D.Pa. June 30, 1998), this is insufficient to establish that a record of impairment exists, especially when this Court has already found that Plaintiff's impairment itself is not legally disabling. *See id.* at *7.

In concluding this disability analysis, the Court finds that Plaintiff's voice impairment does not limit Plaintiff in the major life activities of speaking and working. This Court also finds that no record of impairment exist.

## II. TITLE VII CLAIM

Defendant contends that it is entitled to summary judgment as to Plaintiff's Title VII claim because (a) Plaintiff was not similarly situated with other employees, and (b) there is no evidence that Plaintiff was discriminated against based on race.

In Title VII disparate treatment cases, this Court applies what has been coined the *McDonnell Douglas/Burdine* three-step shifting analysis. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the prima facie requirement is satisfied, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the employment decision. If the employer does so, the burden shifts back to the Plaintiff to show the nondiscriminatory reason offered by the Defendant-employer was a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 801, 93 S.Ct. 1817.

### 1. Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of Title VII discrimination, Plaintiff must satisfy four elements: 1) the Plaintiff is a member of a protected class under Title VII; 2) the Plaintiff was qualified for the job from which Plaintiff was dismissed; 3) the Plaintiff was treated differently than similarly situated employees who were not members of the protected class; and 4) that sufficient direct of circumstantial evidence exists to infer a nexus or causal connection between race and the disparate treatment. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.1984); *McKeon v. Vaicaitis*, 825 F.Supp. 290 (M.D.Fla.1993).

Both parties agree that Plaintiff meets the first element; Plaintiff is a member of a protected class because he is an African–American.

As to the second element, Plaintiff offers his previous Employee Performance Plans and Appraisals as evidence to show that he was qualified for his position as a press helper. The appraisals indicate that Plaintiff received satisfactory scores in all relevant subcategories except for one. Additionally, Defendant made no attempt in its motion to argue that Plaintiff was not

qualified. Therefore, the Court concludes that Plaintiff was qualified for his job.

With respect to the third element, the parties do not agree. Plaintiff argues that Defendant treated him differently from other similar situated employees who were not members of the protected class. Plaintiff assets that "Sharon Kaye, a white female, was treated more favorably in that she was afforded an extended period of light duty in the pre-press area following an injury" when he was not.

In *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992), the plaintiff attempted to establish a *prima facie* case for race discrimination by contending that other employees received more lenient treatment. The *Mitchell* Court held that the plaintiff was not similarly-situated and reasoned that "[i]t is fundamental that to make a comparison of a discrimination, plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Id* at 583.

 In the present case, Plaintiff is not similarly situated. The employee with whom the Plaintiff claims the Defendant treated "more favorably," Sharon Kaye, is not comparable. First, Plaintiff requested that Defendant place him in a *permanent* light duty position for the remainder of his employment. Sharon Kaye was only assigned a *temporary* light duty position while recovering from knee surgery that precluded her from standing. As was stated in *Mitchell,* "the Plaintiff must show that the 'comparables' are similarly-situated in all respects." *Mitchell* at 583. Here, the position requested by the Plaintiff, *permanent* light duty, is not equivalent to Sharon Kaye's temporary light duty position. Additionally, Plaintiff offers no evidence that any employee, minority or non-minority, was assigned a permanent light duty position. Therefore, the Court finds that the Plaintiff is not similarly situated in all respects to Sharon Kaye, and has failed to meet the initial burden of establishing a *prima facie* case.

On account of Plaintiff's failure to meet the initial burden of establishing a *prima facie* case, the Court does not reach Defendant's legitimate, nondiscriminatory reason or Plaintiff's proof of pretext arguments that follow under the *McDonnell Douglas/Burdine* analysis.

Because this Court concludes that Plaintiff does not have a disability within the definition of the ADA, and Plaintiff failed to establish a prima facie case under Title VII for discrimination, this Court finds it appropriate to grant Defendant's Motion for Summary Judgment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment, (Dkt.# 15) is granted. The Clerk of the Court shall enter a final judgment for Defendant.