

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Johnson v. Diamond State Port

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Johnson v. Diamond State Port" (2002). *2002 Decisions.* Paper 687.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/687

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————

No. 01-4031

——————

KERRY W. JOHNSON,

Appellant

v.

DIAMOND STATE PORT CORPORATION

——————

Appeal from the United States District Court
For the District of Delaware
D.C. No.: 99-cv-00153
District Judge: Honorable Gregory M. Sleet

——————

Argued: Wednesday, October 16, 2002

Before: BECKER, Chief Judge, ROTH and ROSENN, Circuit Judges.

(Filed October 30, 2002)

Jeffrey K. Martin, Esq. (Argued)
Jeffrey K. Martin, P.A.
1509 Gilpin Avenue
Wilmington, DE 19806
*Counsel for Appellant*

Donald E. Reid, Esq. (Argued)
Morris Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Counsel for Appellee*

——————

OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

Kerry Johnson, an African-American crane operator, suffered an injury in an off-duty car accident in 1995. Johnson alleges that his employer Diamond State Port Corporation (DSPC or Company) denied him temporary light-duty reassignment because of his race. The District Court granted summary judgment for DSPC based on the Court's conclusion that Johnson had not made out a *prima facie* case of discrimination under Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. § 2000e (2002). The Court concluded that the allegations contained in Johnson's affidavit failed to provide a genuine issue of material fact as to whether similarly-situated non-minority employees were granted light-duty assignments while injured. Because Johnson's affidavit fails to state facts of which he had personal knowledge with sufficient specificity, we see no error in the Court's judgment.

The District Court also denied plaintiff's motion for reargument or reconsideration and refused to allow post-judgment consideration of an affidavit from a former supervisor that corroborates some of the allegations made by Johnson. Johnson's counsel argues that it would be a "manifest injustice" to exclude the affidavit and he urges this Court to overturn the District Court's denial of plaintiff's motion for reargument or reconsideration. The District Court found that plaintiff's counsel's carelessness was solely responsible for the failure to submit the affidavit before summary judgment was entered in favor of the

2

defendant. See Dist. Ct. op. at A 010. Mr. Johnson's attorney had every opportunity to timely submit the Jenkins affidavit. We hold that the District Court did not abuse its discretion in denying reconsideration or reargument.[1]

## I.

Following Johnson's accident, Johnson's doctor informed him that he could return to work in any position that did not require "lifting, pulling[,] . . . excessive walking or climbing." At that time, Johnson attempted to return to work, but DSPC advised him that no light-duty work was available to him. In February 1996, Johnson again attempted to return to work and was again refused light-duty work. On August 19, 1996, Johnson's doctor lifted his medical restrictions and Johnson returned to work.

On November 18, 1997, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that DSPC denied him temporary light-duty reassignment because of his race. The EEOC conducted an investigation, denied Johnson's claims, and issued a right to sue notice.

Having duly exhausted his administrative remedies, Johnson filed a *pro se* complaint against his employer in the U.S. District Court for the District of Delaware.[2] The

---

[1] The District Court entered an order granting summary judgment for the defendant on August 2, 2001 and a separate order denying the plaintiff's motion for reargument or reconsideration on October 5, 2001. Johnson only properly appealed the October 5, 2001 order.

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 (2002) because plaintiff's complaint presents a federal question. See 42 U.S.C. § 2000e (2002). Although DSPC is an instrumentality of the State of Delaware, Title VII validly abrogates Delaware's sovereign immune from suit by state employees. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456-57

complaint alleged that he had been denied light-duty work discriminatorily on several occasions because of his race. The defendant filed a brief in support of a motion for summary judgment, claiming that Johnson had failed to establish a *prima facie* case of discrimination because he had not shown that similarly-situated non-minority employees received light duty. Johnson had meanwhile retained counsel who filed a brief opposing the motion for summary judgment.

In an affidavit submitted with the brief, Johnson alleged that light-duty positions were offered to injured non-minority employees both prior to his return to work on August 19, 1996 and subsequently. He specifically identified nine non-minority workers who were either given light duty when injured or allowed to continue in their previous jobs despite medical restrictions. On June 15, 2001, defendant filed a reply brief, including affidavits from those non-minority employees. With one exception, the non-minority employees' affidavits acknowledged the injuries set forth by plaintiff, but denied light duty or any other status different from the defendant. The one exception was Swann, whose special training and experience qualified him for available work in the Company's mechanic's storeroom.

Apparently due to plaintiff's counsel's error, plaintiff's counsel did not read defendant's brief and affidavits until after the District Court granted defendant's motion to dismiss on August 2, 2001. Plaintiff concedes that defendant's counsel did in fact deliver the brief and affidavits to plaintiff's counsel's office on June 15, 2001, but asserts that his counsel did not actually become aware of the affidavits until August 2, 2001.

-----

(1976).

Judge Sleet's August 2 order granted defendant's motion for summary judgment on the ground that plaintiff had failed to provide a genuine issue of material fact as to one of the necessary elements of plaintiff's *prima facie* case: that similarly-situated non-minority employees received the benefit of light-duty work.

Plaintiff filed a motion for reargument, including an affidavit of Arthur Jenkins, who was the only African-American exempt administrator at DSPC. Jenkins was the Acting Safety Director and Human Resource Personnel Administrator for Casual Employees from 1993 through 1997. His affidavit disputes some of the claims made in the affidavits submitted along with defendant's brief and asserts that Jenkins believes that Johnson was denied light duty because of his race. On October 5, the District Court denied plaintiff's motion for reargument and disallowed the introduction of Jenkins' affidavit because it was untimely. Plaintiff timely appealed to this Court. We have jurisdiction under 28 U.S.C. § 1291 (2002) because the District Court's order denying reargument or reconsideration is a final order. We affirm the judgment.

## II.

The standard for our review of the District Court's decision to grant summary judgment is plenary. See Beers-Capital v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001). We view the facts in the light most favorable to Johnson and we draw all reasonable inferences in his favor. Id.

The District Court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c);

5

Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The initial burden is on the defendant to establish the non-existence of any genuine issue of material fact. See Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir. 1997). Once the defendant discharges this burden, the plaintiff must set forth affirmative evidence and specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Once the burden has shifted, the plaintiff cannot simply rest on the allegations and denials in his pleadings but must produce significant probative evidence tending to support the complaint. Id.

The appropriate standard for evaluating whether the plaintiff has established his *prima facie* case is articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Johnson must show: (1) that he belongs to a racial minority; (2) that he requested and was qualified for a job benefit; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, similarly-situated DSPC employees outside the protected class received that benefit. Johnson has satisfied the first three prongs. The District Court held that Johnson's affidavit alone does not provide a genuine issue of material fact with regard to the fourth prong because it rests upon "mere allegations and not specific facts." See Dist. Ct. op. at 6.

### III.

Johnson claims that since he was employed by DSPC, he was in a position to observe the light-duty work of others. Closer scrutiny of Johnson's affidavit reveals, however, that his assertions are conclusory. Assuming he was in a position to observe

6

similarly-situated employees working light-duty jobs, he failed to express his direct observations in the affidavit submitted to the District Court. At oral argument before this Court, Johnson's attorney attributes this failing to poor drafting and attorney error. Be that as it may, on the record before this Court Johnson, as we explain, has failed to provide a genuine issue of material fact that is sufficient to justify reversal of summary judgment.

Johnson correctly avers that the Company gave Ken Swann light duty when he suffered from a heel spur in his foot, but DSPC asserts that Swann was not a similarly-situated employee because he had special skills to discharge the duties assigned to him in the mechanic's storeroom. DSPC's Director of Human Resources, Philip Intermediato, described Swann's reassignment as "a unique, one-time situation." Swann's light duties consisted of a manual inventory of the mechanic's storeroom. Johnson claims that no special skills were needed in the light-duty job to which Swann was assigned. Johnson does not specifically describe the basis for his knowledge about Swann's duties, but his brief generally asserts that since he was employed by DSPC at that time, he was in a position to observe the light-duty work of others. Intermediato avers that Swann's light duty did require computer skills and technical knowledge of mechanical parts in the inventory. Markow took over the position of Store Room Clerk in August 1997, as Swann was finishing up the inventory. Markow claims to have observed Swann's work directly. He states that Markow's experience as a mechanic was critical to the accurate labeling of the parts. Because there is no record evidence that the inventory job was available at the time Johnson sought light-duty work or that Johnson had the relevant mechanical knowledge of the parts in the

mechanic's storeroom required for the assignment given to Swann, there is no genuine issue of material fact as to whether Swann was a similarly-situated employee who was granted a benefit that was denied to Johnson.

Johnson alleges that after Andrew Markow injured his back DSPC allowed him to continue working as a crane operator with restrictions on heavy lifting, pulling, or pushing from May 19, 1997 to May 23, 1997. Intermediato admits that Markow had back problems and was medically restricted by his doctor, but denies that DSPC gave him light-duty work. Markow claims that he was not on any medical restrictions for his back during the period referred to in Johnson's affidavit. Markow states that he did pull a muscle in his back in the fall of 1997, but returned to work without restrictions.[3] Johnson claims that Markow was allowed to continue working with restrictions but he does not point to any specific instance or instances when he directly observed Markow working with restrictions. He does not state that he had any personal knowledge of Markow's situation. What we are left with is Johnson's bare allegation unsupported by specific evidence.

Johnson alleges that DSPC gave Donald Zimmerman, a fork lift operator, light duty in a storeroom as a result of a back injury. Zimmerman concedes that he injured his back in June 1998 and that he was off work until February 1999. However, he avers that when he

---

[3] DSPC contends that Johnson's affidavit does not claim Markow, Walls, Hill, Peltz, Reese, and Cutler were assigned light-duty. Instead, in DSPC's view, Johnson's claim is merely that they were allowed to work with various ailments and injuries. However, we see no material difference between being reassigned to light duty and being permitted to work in one's original job with restrictions. Either way, the employee is able to obtain paid employment without exacerbating his injury or disobeying his doctor's order.

returned to work he did not receive light duty. Johnson does not state any particular instance in which he observed Zimmerman working in a storeroom rather than as a fork lift operator. Therefore, Johnson's affidavit adds little to his initial allegation that Zimmerman was a similarly-situated employee who was treated differently.

Johnson alleges that after Arthur Walls injured his arm, he was assigned to his regular position as a crane operator but exempted from lifting. Intermediato claims that Walls missed over two months of work, but returned to work without restrictions and was never given light-duty work. Again, Johnson fails to state that he observed Walls during the time that he was recuperating and fails to submit any other direct evidence that supports his allegations.

Cathcart, a crane operator, injured his neck in 1996. Johnson claims that DSPC reassigned Cathcart to light maintenance while he was taking medication after his injury. Cathcart concedes that he sprained his neck in 1996, but disputes Johnson's allegation that DSPC gave him light duty or a light maintenance position.[4] Johnson's statements to the contrary are too conclusory to serve as evidence rather than mere allegations.

Johnson alleges that after Charles Hill injured his hand with a saw, DSPC reassigned him from operating a forklift to a floating position. Intermediato admits that Hill did have a work-related injury in 1999 and was forced to miss three months of work.

_____

[4]Intermediato claims that Cathcart did not miss any work and was not given any light duty. However, Intermediato did not have any direct knowledge of Cathcart's assignments during that time because he did not begin working as Director of Human Resources until January 27, 1997.

However, Intermediato avers that Hill only returned once his doctor cleared him to work without restrictions and denies that Hill was given any light-duty work. Hill acknowledges the injury, but denies that he was ever given any light-duty work. Johnson does not state that he directly observed Hill perform his duties and whether he operated a forklift or not after he injured his hand. Therefore, there is no genuine issue of material fact as to whether Hill was a similarly-situated employee.

Johnson claims that when James Peltz broke his ankle, he was reassigned from his job as a warehouse clerk to a seated office position. Intermediato concedes that Peltz had an injury that was not work-related and that he used crutches for a period of time. However, Intermediato asserts that Peltz fully performed his job and was not given any special assignments. Intermediato explains that Peltz was offered a full-time job as an office clerk in March 1997, but avers that this reassignment occurred as a result of his application for a new job and without regard to his injury. Furthermore, Intermediato avers that Peltz's injury did not interfere with his ability to perform his duties as an office employee. An employee such as Johnson who requests temporary light-duty work is not similarly-situated to an employee such as Peltz who applied for and obtained permanent light-duty work. Cf. Ross v. GTE Directories Corp., 73 F. Supp.2d 1342, 1350 (M.D. Fla. 1999) (holding that an African-American employee who requested permanent light duty was not similarly situated to a non-minority employee who obtained temporary light-duty work while recovering from knee surgery).

Johnson avers that when John Reese had foot surgery, he was allowed to work as a

port engineer despite having to wear a surgical shoe. Reese acknowledges that he did have a non-work-related foot injury in March, 2000, but avers that the soft cast he wore did not interfere with the performance of his duties as a Port Engineer without restrictions. Intermediato confirms that Reese was never assigned light duty. Johnson did not state that he observed Reese's cast interfering with his duties. Thus, there is no genuine issue of material fact as to whether Reese received a benefit which Johnson was denied.

Malcolm Cutler was not a similarly-situated employee because his injury occurred ten years before DSPC took over operation of the Port.

A genuine issue of material fact exists when the record, taken as a whole, contains such evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248. DSPC met its burden of establishing the non-existence of any genuine issue of material fact. On the other hand, Johnson's affidavit contains mere allegations rather than significant probative evidence tending to support the complaint.

IV.

Plaintiff argues that the District Court erred in denying its motion for reargument or reconsideration. We disagree and therefore we do not reach the closer question of whether the Johnson affidavit and the Jenkins affidavit jointly would establish a *prima facie* case under McDonnell Douglas.

Upon discovering that the District Court had entered summary judgment in the defendant's favor based in part upon affidavits Johnson's lawyer had neglected to address, plaintiff's counsel moved for reargument and reconsideration under Delaware District

11

Court Rule 7.1.5 and Federal Rule of Civil Procedure 59(e).

The standard for obtaining relief under Rule 59(e) is difficult for plaintiffs to meet. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990). However, reargument may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. Id. at 1241 (internal quotations and citations omitted).

A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Plaintiff does not claim there has been a change in the prevailing law. Likewise, Jenkins' affidavit was previously obtainable and Johnson could have submitted it earlier. Therefore, Johnson's only remaining argument is the implausible claim that his motion for reargument or reconsideration should be granted because it is necessary "to correct a clear error of law or fact or to prevent manifest injustice."

The District Court held that Johnson's counsel failed timely to submit Jenkins'

12

affidavit. <u>See</u> Dist. Ct. op. at A 010. DSPC proved that it properly served plaintiff's counsel with its reply brief and accompanying affidavits on June 15, 2001, seven weeks before the District Court's summary judgment order. Jenkins was identified as a potential witness in Johnson's March 6, 2001 interrogatory answers, about two months prior to plaintiff's brief contesting DSPC's summary judgment motion. <u>Id.</u>

Johnson has not established that the District Court's abused its discretion when it denied the motion for reargument or reconsideration. We conclude that the District Court's exclusion of the Jenkins affidavit did not cause "manifest injustice."

V.

Accordingly, we affirm the District Court's order denying plaintiff's motion for reargument or reconsideration. Costs taxed against appellant.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Max Rosenn
Circuit Judge